*112
 

 Per Curiam.
 

 Claimant and the State entered into an agreement in March, 1958 for the construction of a building at Manhattan State Hospital on Ward’s Island for a gross sum in excess of $6,000,000, which included rock excavation at the site. The amount payable for this item is the subject of this appeal. The contract provided for a lump sum for all the work to be performed with two exceptions, one of which was that unit prices were prescribed for excavation in quantities in excess of or less than the amounts assumed by the specifications. It was accordingly provided in the specifications that if the general rock excavation exceeded 500 cubic yards the
 
 “
 
 contract sum will be adjusted ” at $10 a cubic yard and if rock excavation in piers and trenches exceeded 600 cubic yards the unit price was to be adjusted at $22 a cubic yard.
 

 The actual rock excavation required to be performed under the contract greatly exceeded the 500 yards and 600 yards respectively, which were the quantities fixed beyond which the specified unit prices were required to be paid. The total rock excavation was 2,982 cubic yards. It is not an issue on this appeal that claimant has been paid for these additional quantities at the unit prices provided for them.
 

 Claimant’s contention is that the excess rock excavation was so large as to be deemed beyond contemplation of the contract and, therefore, that the parties were not bound by the unit prices. Claimant also argues the State misrepresented the amount of work to be done. The Court of Claims was of opinion this excess of excavation was so great that claimant was not bound by the specified unit prices for excavation and seemed to be of opinion that an excess of 10% “ over the estimated quantities ” would permit the contractor to recover on a
 
 quantum meruit
 
 basis for excavation in excess of those quantities. This conclusion was based on the court’s opinion that the total rock excavation required to be performed was
 
 “
 
 outside of any reasonable contemplation at the time of the contract ”.
 

 The Appellate Division took a different view and applied the contract provision the way it read — that the additional work be paid for at the agreed unit prices for additional work. We believe this to be the correct disposition of the controversy.
 

 It is manifest from the written documents expressing the agreement between the parties that rock excavation above or
 
 *113
 
 below the specified 500 and 600 yards could be anticipated and was being provided for. Nothing is provided concerning what would happen if the work agreed to be done at the unit prices exceeded 10% of the total nor is there any ceiling- put on the total rock excavation required at the stated prices.
 

 The risk of quantity of rock excavation was a risk of the contract and it was a risk stated in plain language and assumed by the claimant. This contingency was stated in terms of unit prices; and if the quantities ran beyond the amounts which the contractor had in mind in agreeing to do the work, he was nevertheless bound to perform the agreement according to its express terms.
 

 There seems no possible basis for allowing the claimant more money at a higher rate because the actualities of performance did not match its expectations. It was claimant’s obligation at claimant’s own risk to do the work it agreed to do
 
 (Weston
 
 v.
 
 State of New York,
 
 262 N. Y. 46, 51;
 
 Foundation Co.
 
 v.
 
 State of New York,
 
 233 N. Y. 177;
 
 Leary
 
 v.
 
 City of Watervliet,
 
 222 N. Y. 337).
 

 Nor is there any factual basis in the record for the further contention of claimant that the State ‘ ‘ misrepresented the amount of work to be done, for which it should be held liable The record shows, on the contrary, there was no representation that rock excavation would be 1,100 cubic yards and nothing more; and the specific provision for unit prices in excess of this quantity negatives any possibility that the claimant could have believed the contract was so limited. No reasonable man would believe an absolute maximum quantity was being agreed upon when, at the same time, special provision was being made for payments in excess of a maximum.
 

 In planning the design of the building the State took 17 borings at the site to determine the character of the subsurface. Most of these were around the perimeter of the building. A few were within its area. The information disclosed by these borings was recorded in a drawing which was made part of the specifications.
 

 The information as to subsurface conditions disclosed by these borings, including the materials recovered in boring and the presence of subsurface water where found, was made available to the claimant in preparing its bid. The claimant, in
 
 *114
 
 respect of what would actually be found when excavation was carried out, was thus as well advised as the State.
 

 The building was erected on 216 concrete piers which rested on footings which the contract required to be dropped at least six inches into solid ledge rock wherever this solid rock was found. It was claimant’s obligation to excavate until solid rock was found.
 

 The 17 borings in drill holes of about two inches in diameter could occupy only a miniscular part of the total excavation where 216 pier footings alone each ran in the neighborhood of 25 square feet in area. Claimant’s contention seems to suggest that full exploration of all subsurface material under all footings should have been carried out by the State. This is quite unreasonable. The borings were intended to indicate conditions in subsurface material from place to place and to make it possible to average them out. That the actual rock excavation exceeded the average which the borings indicated should not impose an additional obligation on the State.
 

 No reasonable bidder could have assigned to the borings a more significant role of specificity; or could have expected them to represent more than a small number of samplings over a large area.
 

 If this were not enough in itself to advise a sophisticated bidder, the State attached to the “Foundation Investigation Notes ”, which were referred to in the specifications and furnished to claimant, an express signal to bidders that ‘ ‘ This information is intended for State design purposes only, and is made available to bidders only that they may have access to identical subsurface information available to the State. It is presented in good faith, but is not intended as a substitute impersonal investigations, interpretations or judgment of the Contractor ”.
 

 Thus, there is no proof to sustain the claimant’s'argument that the State misrepresented the rock excavation risk. The record, rather, sustains the view there was no misrepresentation
 
 (Foundation Co.
 
 v.
 
 State of New York, 233
 
 N. Y. 177,
 
 supra).
 

 The order should be affirmed, with costs.
 

 Chief Judge Futo and Judges Van Voorhts, Burke, Bergan, Keating and Breitel concur; Judge Scileppi taking no part.
 

 Order affirmed.