INTERSTATE WRECKING CO., INC., PLAINTIFF, v. PALISADES INTERSTATE PARK COMMISSION AND CLARKE & RAPUANO, INC., DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided October 2, 1968.

396

*Mrs. Sonia Napolitano* for plaintiff (*Messrs. Pindar, McElroy, Connell & Foley,* attorneys).

*Mr. J. Joseph Murphy,* Assistant Attorney General of the State of New York, for defendant Palisades Interstate Park Commission (*Mr. Louis J. Lefkowitz,* Attorney General of New York; *Mr. William J. Brennan, III,* Assistant Attorney General of the State of New Jersey, on the brief).

*Mr. Clifford J. Sheehan* for defendant Clarke & Rapuano, Inc. (*Messrs. Hueston & Hueston,* attorneys).

BARGER, J. S. C. Defendant Palisades Interstate Park Commission (hereinafter Commission) moves under *R. R.* 4:12–2(*a*) and (*b*) for an order quashing the service of the

summons and complaint upon it on the ground that Superior Court of New Jersey lacks jurisdiction over the subject matter and of this defendant on the grounds herein discussed, there being no objection raised to the service of process.

On the return of the motion defendant Clarke & Rapuano, Inc. appeared and through counsel joined in the arguments advanced by plaintiff and contained in its brief opposing the motion. This defendant further indicated it was not objecting to the hearing of the motion because it had not been served as one of the parties with a notice of the motion.

This litigation arises out of a public improvement contract, known as B.M.–76 dated February 10, 1967, between defendant Commission and plaintiff. The work to be performed thereunder was the demolition of certain buildings situated on Iona Island in Rockland County, N. Y., in preparation for the recreational development of the area concerned.

A summons and complaint was served by registered mail upon the Commission on April 11, 1968 under *R. R.* 4:4–5(*b*). The three counts of the complaint directed against the Commission are based on an implied contract for extra work, alleged fraud, negligence, and misrepresentation in supplying certain pre-bid information. Co-defendant Clarke & Rapuano, Inc., a New York corporation, with offices at 830 Third Ave., New York City was the firm of consulting and supervising engineers and architects employed by the Commission in the project, the subject matter of the contract. It has raised no objection to the service of process.

The Commission was created by interstate compact entered into between the States of New York and New Jersey on June 2, 1937, pursuant to *chapter* 170 of the Laws of the State of New York for the year 1937 (*Conservation Law, McKinney's Consol. Laws, c.* 65, § 745 *et seq.*) and *chapter* 148 of the Laws of New Jersey for the year 1937 (*N. J. S. A.* 32:17–1 *et seq.*). The consent of Congress was received under *Joint Resolution No.* 65 of August 19, 1937, *chapter* 706, 50 *Stat.* 719.

Article II of the compact (*N. J. S. A.* 32:17–4) creates a body corporate and politic and provides that "the commission shall have power to sue and be sued."

The contract referred to and brought into question through this litigation resulted from specifications and requests for bids advertised in New York State, executed in New York State and totally performed in New York State. The total amount of the consideration in the contract has been or will be paid out of the appropriations by the Legislature of the State of New York to the Commission. Plaintiff is a corporation of the State of New Jersey with its principal office at 52 Commerce St., Springfield, N. J. The Commission is under the aforementioned compact, a bi-state body politic and instrumentality of the States of New York and New Jersey.

It is the contention of the Commission that as an instrumentality of the sovereign State of New York, performing governmental functions on behalf of that state, it is entitled to governmental immunity against suit since there is no "express waiver" of such immunity contained in the compact or under the laws of New York. It points to certain legislative enactments that indicate an intention on the part of the New York Legislature of not waiving the immunity and that the Commission continue to be an agency or instrumentality of the state, specifically referring to section 745 of the Conservation Law of New York, as amended by *chapter* 663 of the *Laws of* 1939 of that state, which provides that the Commission

"* * * shall continue in the division of parks in the conservation department in so far as lands in Palisades Interstate Park lie within this state, said Palisades Interstate park commission by said compact having succeeded to the rights, powers, duties and obligations of the board of commissioners of Palisades interstate park, a body politic created pursuant to chapter one hundred seventy of the laws of nineteen hundred, in the manner and to the extent provided in said compact."

Under the provisions of section 672 of the Conservation Law of New York, the Commission is the body having im-

mediate jurisdiction and control of parks and parkways owned or acquired by the State of New York in the eighth park region, comprising Rockland and Orange Counties. This is one of the park regions into which the state is divided for the purpose of such administration. All lands acquired by the Commission are for the use of the public for park purposes. Monies required for the support and maintenance of the work of the Commission are included in the annual budget of the Conservation Department, a part of the New York State Budget, and which appropriations are made by the Legislature to cover approved requirements of the Commission and are examined and audited by the New York State Comptroller. It is the contention of the Commission that all of these foregoing facts conclusively establish that the Commission is an instrumentality of the State of New York performing governmental functions, and that as such it can only be sued for damages in the Court of Claims of the State of New York. Further, that plaintiff does not have the right to select the forum and this claim should have been filed in the Court of Claims.

It has long been established that a state instrumentality does have governmental immunity unless waived by the Legislature. *Breen v. Mortgage Commission of State of New York,* 285 *N. Y.* 425, 35 *N. E.* 2d 25 (*Ct. App.* 1941), reversing 260 *App. Div.* 753, 23 *N. Y. S.* 2d 948 (1940).

The cases cited in the brief filed in behalf of the Commission point up the distinction which must be drawn between immunity from suit and immunity from liability and restrictions on the forum. Further, where there is consent on the part of the state for its instrumentality to sue or be sued, this does not necessarily permit the claimant to select the forum for that suit where a special forum has been established by the Legislature. *Breen, supra,* 285 *N. Y.,* at *p.* 432. If this court determines that there has been consent to suit under the compact language, then the question arises as to whether plaintiff has filed the suit in the proper forum in

view of the Court of Claims Act herein referred to, or whether this court lacks jurisdiction. The question of the forum is never reached until it is first determined that the state has consented to the suit through language in legislation construed as waiving its immunity. Whether the action is in contract or in tort is of consequence only in determining the question of substantive law applying, and this question, of course, is not reached until the state has consented to be sued and it is determined that the forum selected by the claimant has jurisdiction.

It is a well established rule of law that the state cannot be sued without its consent. *Smith v. State*, 227 *N. Y.* 405, 125 *N. E.* 841, 13 *A. L. R.* 1264 (*Ct. App.* 1920) reversing 185 *App. Div.* 918, 171 *N. Y. S.* 1100 (1918) ; *Breen, supra*, 285 *N. Y.*, at *p.* 432, 35 *N. E. 2d* 25. In *Breen* the court pointed out that under the statute there being construed the state had not consented to have its liability determined outside the Court of Claims, and that the Supreme Court of the State of New York had no jurisdiction to entertain the action. It is noted that in *Breen* the commission involved was created for a restricted purpose and the consent was only in connection with the administration of certain mortgages; and the Commission, when created, was created as an agency of the State of New York (Mortgage Commission Act, *L.* 1935, *c.* 19, § 2, *McKinney's Unconsol. Laws*, § 4802). The agency was created to meet the then public emergency existing with respect to certain mortgages. The court determined that the inclusion of the language "sue and be sued" did not amount to a consent on the part of the state to be subjected to a judgment obtained in an action brought in any court other than the Court of Claims. The inference from this language is that there was consent to the suit but not to the forum.

The court in *Karp v. High Point Park Commission*, 131 *N. J. Eq.* 249 (*Ch.* 1942), affirmed 132 *N. J. Eq.* 351 (*E. & A.* 1942), noted:

"Our statute, *R. S.* 13:5–2, *N. J. S. A.* 13:5–2 enacts that the Board of Commissioners of High Point Park and its successors shall be a body politic with power to sue and be sued. The defendant argues that those words only confer a power on the Commissioners and mean that the Commissioners may be sued in those cases in which the Legislature, by some other enactment, consents that the defendant be sued. I do not so construe them. *The section constitutes a consent by the legislature to suit against the Commission.* In the Strobel case cited above, it is clear that the court was of the opinion that the words "with power to sue and be sued" have this result. To the same effect are [cases cited]. * * * The defendant relies on *Stephens v. Commissioners of Palisades Interstate Park,* 93 *N. J. L.* 500, 108 *A.* 645. But there, the judgment for defendant went on the ground that no cause of action in favor of an individual arose from the negligence of a public agency in the discharge of a public duty. Though the statute creating the public agency, which was the defendant in that suit, expressly authorized suit against the agency, the court held that this did not create a liability in favor of the plaintiff."

In *Taylor v. N. J. Highway Authority,* 22 *N. J.* 454, 470 (1956), the court indicates the growing hostility to the doctrine of governmental immunity. This is due to several causes, one being the tendency of the several states to entrust to such separate bodies politic, instead of a department or agency of the State Government, various functions not perhaps previously regarded as necessary or essential governmental functions. The vast changes in population and our economic life creating complex governmental problems in transportation, recreation, air pollution and other public areas requires joint action by the states concerned. The court states:

"The hostility towards the doctrine of governmental immunity is also evidenced in the states and it seems to us that pertinent statutory waivers should fairly receive as liberal construction in the states as in the federal sphere. In recent years there has been a noticeable tendency of legislative bodies to entrust to independent Authorities, functions which necessitate relationships comparable to those ordinarily existent between private parties. It would seem that in all justice such Authorities should generally not be afforded the highly special immunities of the State acting in its sovereign capacity; that much has been recognized by the New Jersey Highway Authority Act, particularly in its broad terminology which unre-

·strictedly permits the Authority to sue and be sued in its own name. *Cf.* Cardozo, J. in *Anderson v. John L. Hayes Constr. Co.*, 243 *N. Y.* 140, 147, 153 *N. E.* 28, 29 (1926) :

The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced."

Interstate problems are more and more being handled by interstate bodies because of their complexity. *Petty v. Tennessee-Missouri Bridge Commission*, 359 *U. S.* 275, 79 *S. Ct.* ·785, 3 *L. Ed. 2d* 804 (1959).

As indicated in the cases cited in the brief of the Commission and herein, it is one thing to waive the right not to be sued and quite another to waive immunity from liability. Certainly, the least that can be said is that the Legislatures of both states intended that there should be a right to sue the Commission in matters relating to and concerning its everyday · business transactions occurring in the ordinary course of business, and particularly relating to questions involved in contracts entered into by the Commission in furtherance of its expressed objectives and in carrying out the purposes of its creation. This court cannot construe the words, "the commission shall have power to sue and be sued," as narrowly as contended by the Commission, and concludes that it was the intention of the legislatures of both states, through the compact, to waive any governmental immunity against suit if, in fact, the Commission ever had such immunity. Such independent authorities cannot claim the immunities of the sovereign authority in view of their varied functions, many of which involve everyday public and private ·business transactions in carrying out their stated purpose of making the recreational facilities under their supervision available to the public.

Article II of the compact (*N. J. S. A.* 32:17–4) describes the Commission thereby created as follows:

"There is hereby created a body corporate and politic with name and style of 'Palisades Interstate· park commission' (for brevity hereinafter referred to as 'the commission') which shall be a joint

corporate municipal instrumentality of both the state of New York and the state of New Jersey for the purpose of effecting the objects of this compact and which shall be deemed to be performing governmental functions of the two states in the performance of its duties hereunder."

This court concludes that the aforementioned immunity, as the result of the language cited, was clearly waived by legislative authority in authorizing the compact, and it appears to be the only construction as a matter of justice that can be placed on the language referred to. Certainly any other construction would be a narrow one contrary to the growing expressed intent of the legislative authority in creating such bodies, and would frustrate the legislative purpose. *Taylor, supra,* 22 *N. J.,* at *p.* 471.

The Court of Claims of the State of New York is provided for in *Article* VI, *Section* 9 of the *New York Constitution* entitled "Court of claims; jurisdiction," and in pertinent part, states:

"The Court shall have jurisdiction to hear and determine claims against the State or by the State against the claimant or between conflicting claimants as the legislature may provide."

In furtherance of the constitutional provision, the New York Legislature, under *L.* 1920, *c.* 922, passed what is known as the "Court of Claims Act." It has been amended from time to time but its jurisdiction never broadened as herein commented upon. In furtherance of authority contained in the statute, the court on November 13, 1939 adopted "Rules of the Court of Claims," amended on July 1, 1966.

The Court of Claims was created for the limited purpose of determining claims for money damages against the State of New York and to avoid in such cases judgments against the State and to provide a forum for such claims where none had existed. It has no general or equity jurisdiction. It cannot constitutionally determine or adjudicate the rights of private parties. The Court of Claims would have no jurisdiction to resolve the issues in this cause between plain-

tiff and codefendant Clarke & Rapuano, Inc., which, if this motion were granted, would still have to be resolved in this action. *Smith-Cairns Motor Sales Co. v. State,* 45 *Misc.* 2d 770, 258 *N. Y. S.* 2d 51, 272 *N. Y. S.* 2d 667 (*Ct. Cl.* 1966); *Braun v. State,* 203 *Misc.* 563, 117 *N. Y. S.* 2d 601 (*Ct. Cl.* 1953); *Court of Claims Act,* §§ 8, 9, *subdivisions* 2, 3, 6, 9; § 12, *subdivision* 3. Conflicting determinations could result.

In *Anderson v. John Hayes Const. Co., Inc.,* 243 *N. Y.* 140, 153 *N. E.* 28, 29–30 (*N. Y. Ct. of App.* 1926), Judge Cardozo, later, Mr. Justice Cardozo of the United States Supreme Court, in reviewing a similar question stated:

"We find no basis in the statute for this division of judicial functions. The state has consented to be sued in the ordinary courts of justice, when the subject matter of the controversy is a lien upon money owing to its contractor. and has consented that, out of any money that may be found to be so owing, judgment may be rendered, directing payment to be made. In consent so explicit, we see no suggestion of a condition that the remedy is to fail if the debt shall be disputed. Justice and convenience combine with the plain wording of the statute in forbidding us to imply a condition so oppressive. No sensible reason can be imagined why the state, having consented to be sued, should thus paralyze the remedy. A court of dignity and power had the parties before it, and had heard the controversy between them. To transfer the controversy to the Court of Claims could work no gain to any interest worthy of protection. Indeed, the special limitations applicable to claims in that court (Court of Claims Act [*Laws* 1920, *c.* 922] § 12) might often bring it to pass that the claim would be barred before the transfer could be made. The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced."

■ This cause of action involves the alleged breach of a private right and duty. The Court of Claims could not, even though the cause of action was not barred under its regulations, give complete relief in view of the cause of action alleged against the codefendant. A multiplicity of actions would result since the issues would not be resolved in one trial. As pointed out in *Taylor, supra,* 22 *N. J.,* at *p.* 468, in actions not involving a charge of negligence in maintaining public

highways, the courts have construed the language, "sue and be sued," liberally in favor of consent to be sued. The cases are reviewed in *Taylor, supra*. The State should not be able to shield itself from liability arising in an ordinary business transaction with one of its instrumentalities by invoking the immunity doctrine. To do so would mean that anyone doing business with any such instrumentality would be doing so at their peril. *Duke Power Co. v. Patten*, 20 *N. J.* 42, 50 (1955).

This court concludes that the clear intention of the Legislature, under the language referred to, was to consent to suit, and particularly in those transactions resulting from ordinary business contacts with the instrumentalities concerned. That under the compact the Court of Claims of New York is not the exclusive forum for the determining of the rights of the parties concerned, and that this court does have jurisdiction and should for the reasons indicated, as a matter of justice to the parties retain jurisdiction.

On the return of the motion the court raised the question as to whether the doctrine of *forum non conveniens* applied in view of the fact that an instrumentality of a State was involved. There is no indication of any inconvenience or hardship on the instrumentality. This is a doctrine of justice for the convenience of parties and witnesses and is recognized by *R. R.* 4:3—3. We do not have here the situation which existed in *Devlin v. National Broadcasting Co., Inc.*, 47 *N. J.* 126 (1966), where there were causes of action involving the same subject matter in several states, and there is no indication that the trial in this county rather than in some other county of the State would pose any hardship or inconvenience upon the Commission. In any event, there is no application before the court for a transfer under the cited rule.

For the reasons indicated, the motion to dismiss the complaint is denied.