## Coyle *v.* Port Authority Transit Corporation et al., Appellants.

Argued November 26, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John B. Martin,* with him *Frank L. White, Jr.,* and *Duane, Morris & Heckscher,* for appellants.

*Leonard M. Sagot,* with him *Ettinger, Poserina, Silverman, Dubin, Anapol and Sagot,* for appellees.

*Howard S. Simonoff,* for amicus curiae.

OPINION BY MR. JUSTICE COHEN, March 25, 1970:

This is an action instituted by twenty individuals, members of Transport Workers Union, Local 234 (TWU) to require the Port Authority Transit Corporation (PATCO) to recognize and bargain with TWU based on a Memorandum of Agreement dated January 13, 1969. Prior to October, 1968, appellees' employer was the Philadelphia Transportation Company (PTC) and its predecessor corporations. The appellees and all other PTC employees similarly situated had as their exclusive bargaining representative, TWU. In October, 1968, the Southeastern Pennsylvania Transportation Authority (SEPTA) took over the operation and maintenance of the transit facilities owned and/or operated by PTC and assumed the obligations of the TWU collective bargaining agreement then in effect which was to continue until January 14, 1969. Part of the local mass transit facilities taken over by SEPTA from PTC was the high-speed operation from 16th and Locust Streets in Philadelphia to Camden, New Jersey (the Bridge Line). About 42 SEPTA employees covered by the TWU agreement were directly employed in the operation of the Bridge Line.

Appellant PATCO is a subsidiary corporation of the Delaware River Port Authority (DRPA) which is a bi-state agency formed pursuant to 1951-52 Compact Legislation (including enabling legislation) by and between the Commonwealth of Pennsylvania and the State of New Jersey and pursuant to an Act of Congress of the United States. In 1963 the two states entered into a Supplemental Agreement to the Compact Agreement which provided, inter alia, that the Commission of the DRPA could form a wholly owned subsidiary corporation to effectuate any of the authorized purposes of DRPA. Pursuant to this Supplemental Compact, PATCO was formed on September 20, 1967, for the purpose of operating the Bridge Line and a

proposed extension to Lindenwold, New Jersey. Prior to the formation of PATCO, TWU informed DRPA of the seniority, pension representation and other rights of the appellee and further notified DRPA that it was obligated to continue to recognize all such rights when and if it took over the operation of the Bridge Line. Similar notification was given to PATCO upon its formation. On December 27, 1968, one day before DRPA terminated its lease to SEPTA to operate the Bridge Line, TWU and DRPA/PATCO orally agreed, among other things, that TWU was to continue as the exclusive bargaining representative for the hourly employees who were to operate the Bridge Line and its extension.

This oral agreement was reduced to writing on January 13, 1969, and that Memorandum of Understanding states that PATCO recognizes TWU as collective bargaining representatives for its hourly employees and that PATCO will give those SEPTA employees whose jobs were eliminated by the take-over (approximately 42) an opportunity to select comparable employment in PATCO. It also states that the parties agree to meet as soon as possible and work out terms of a contract covering wages, hours, pensions, fringe benefits and working conditions. This action has arisen because it is alleged that PATCO has employed only twelve of the forty-two former SEPTA employees, has refused to recognize TWU as bargaining representatives for PATCO employees, and had refused to negotiate a definitive agreement with TWU. The real basis of the controversy is the struggle between TWU and the Teamsters Local Union No. 676 over which will represent employees on the Bridge Line.

In order to avoid confusion, we list in chronological order the course this litigation has taken.

December 28, 1968   Oral agreement between PATCO and TWU.

January 13, 1969   Oral agreement reduced to writing.

January 27, 1969    Teamsters notify DRPA of intent to represent employees.

January 31, 1969    Teamsters petition the New Jersey Public Employment Relations Commission (PERC) to settle the representation question.

February 12 and 21, 1969    Hearings held by PERC hearing officer.

February 28, 1969    Appellees file equity suit in Common Pleas Court of Philadelphia County seeking enforcement of January 13 agreement.

March 13, 1969    Arthur Sills, New Jersey Attorney General, PERC, Teamsters Local 676 and TWU permitted to intervene in equity suit.

March 18, 1969    To preserve labor peace all parties stipulated that PATCO would immediately hire fourteen SEPTA employees who formerly operated the Bridge Line (TWU members) and that their seniority (with respect to nonformer SEPTA people PATCO had hired) would be slotted in proportionately; that within six months PATCO would employ 28 more such employees; and that the trial would proceed on a question of permanent and not preliminary relief.

April 18, 1969    New Jersey Superior Court orders PATCO not to recognize TWU as negotiating agent of its employees or negotiate with them until PERC resolves all issues as to which organization represents them.

April 23, 1969    PERC decides to continue holding hearings.

May 12, 1969    PERC orders hearings to resume June 6.

May 23, 1969    Appellees file motion in Common Pleas Court of Philadelphia County to restrain PERC from holding the hearings scheduled for June 6.

June 5, 1969    Judge Eiseman, presiding over this whole matter, denies the motion to restrain stating the

court doubts its power to restrain a subdivision of another state. He does order appellants not to enforce or carry out any order or decree resulting from the PERC hearings until the equity action has been decided. He bases this on the March 18 stipulation and the fact that further hearings are to begin before him on June 23.

June 19, 1969   This appeal filed.

June 25, 1969   Taking of testimony in the equity action is completed.

July 22, 1969   PERC hearing officer files his report.

September 23, 1969   PERC orders an election to be held.

October 16, 1969   Court of Common Pleas enjoins (in Pennsylvania) the American Arbitration Association from conducting the election.

October 20, 1969   PERC conducts the election itself. Out of 112 eligible to vote, 93 vote for the Teamsters and 2 for TWU.

November 5, 1969   PERC certifies the Teamsters as exclusive representatives.

November 14, 1969   Judge Eiseman files an opinion dismissing appellant's objections to jurisdiction and venue and stating he will decide the merits as soon as this appeal is disposed of.

As the situation now stands, PATCO, by order of the New Jersey Superior Court, is not to recognize or bargain with TWU until PERC has reached a final determination of all relevant questions. Now that PERC has certified the Teamsters as representing the employees, PATCO may run a serious risk of violating that order if it deals with anyone other than the Teamsters. Under Judge EISEMAN's order of June 5, both PATCO and the Teamsters are enjoined from enforcing any PERC decree or order, and both may well be in violation of that order if they begin to bargain as it seems they must do according to the New Jersey deci-

sions. There is no guarantee that any decision by this Court will finally settle the controversy. The New Jersey appellate courts may reach a different conclusion, and the parties will again be subject to conflicting orders. See *James v. Grand Trunk Western Railroad Company,* 14 Ill. 2d 356, 152 N.E. 2d 858 (1958) (dissenting opinion of SCHAEFER, J.)

The problem in this action is not exactly the same as the situation where the equity courts of one state enjoin a litigant from pursuing an action in another state, see Anno. 74 A.L.R. 2d 828, but the general principles relevant there are applicable. In certain situations, in the interests of comity, one state will recognize an equity decree of a sister state. *New Orleans & N.E.R. Co. v. Bernich,* 178 La. 153, 150 So. 860 (1933); *Hall v. Milligan,* 221 Ala. 233, 128 So. 438 (1930); *Fisher v. Pacific Mutual Life Insurance Co.,* 112 Miss. 30, 72 So. 846 (1916).

The principle of comity is extremely important in an action such as this where one party is the creation of a bi-state compact and neither state's law is clearly controlling. Rather than state that we will give recognition to a New Jersey decree, we hold that the lower court should have declined jurisdiction of this matter because New Jersey is the state with the most significant relationship with the parties and events. PATCO's principal offices are located in Camden; its maintenance center and headquarters are located in Lindenwold; eight of twelve stations are located in New Jersey; all the employees report to work there; 95% of the employees actually work there; it hires in New Jersey; a great majority of its investments are in New Jersey; and the majority of the patrons using the line are residents of the New Jersey area who commute to and from Philadelphia.

Helping us reach this conclusion is the fact that another forum is readily available. *Plum v. Tampax, Inc.,*

399 Pa. 553, 160 A. 2d 549 (1960). This is not an action in which convenience, in the sense of availability of witnesses and evidence, is involved as much as is the concept of appropriateness of exercising jurisdiction. The availability of another forum, however, is an element in determining appropriateness. When presented with cases, courts should be careful to weigh the costs of assuming jurisdiction, and after examining the long and complex history of this action, we feel it important that the controversy be finally settled by the jurisdiction that has the greatest interest in the matter. The conflicting orders of various courts and agencies indicate that the only way in which this result can be assured is for the courts of Pennsylvania to decline jurisdiction.

The order of the court below is vacated, and all proceedings are dismissed. Costs on appellants.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Saying that its decision is dictated by the principles of comity, the majority today declares that the trial court should never have taken jurisdiction over this suit. The result of this conclusion is that the courts of this Commonwealth will never be able to play any role in the resolution of this controversy. I must dissent for several interdependent reasons.

First, Pennsylvania's interest in this controversy, though probably quantitatively less than that of New Jersey, is still substantial. The contract upon which the appellees base their cause of action was signed in Pennsylvania by an employer created in part by the Commonwealth and by a union representing Pennsylvania-based employees. And although most of the PATCO-operated high-speed line lies in New Jersey, that section of the operation in which the affected employees used to work ran only between Philadelphia

and Camden. This is therefore not a case where Pennsylvania's interest is truly insubstantial.

Secondly, even if both Pennsylvania and New Jersey assume jurisdiction, and even if both states attempt to resolve the controversy, it is not inconceivable that their actions will be compatible. Pennsylvania need not specifically enforce the TWU-PATCO agreement, but could grant such relief as damages or merely requiring PATCO to hire the affected employees without mandating their union affiliation. In fact, assuming that both states will apply intelligent conflicts-of-law rules, the likelihood of consistent and complimentary outcomes in both suits is high.

Thirdly, I believe that it is improper to dismiss a case on grounds of comity at the preliminary objection stage whenever there is the least doubt as to the propriety of such an action. All of the ends which are served by such a resolution can be equally well reached at a later stage in the litigation. The inconveniences of proceeding further seem slight when compared with the finality of dismissal. At the very least, the trial court could, if appropriate, stay the proceedings but retain jurisdiction pending the outcome of litigation in the other forum before deciding to divest itself of all jurisdiction over the matter.