57 N.J. 342 (1971)
273 A.2d 10
INTERSTATE WRECKING CO., INC., PLAINTIFF-RESPONDENT,
v.
PALISADES INTERSTATE PARK COMMISSION, DEFENDANT-APPELLANT, AND CLARKE & RAPUANO, INC., DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued November 10, 1970.
Decided January 25, 1971.
*343 Mr. Julius L. Sackman, Assistant Attorney General of New York, argued the cause for the defendant-appellant (Mr. George F. Kugler, Attorney General of New Jersey, and Mr. Louis J. Lefkowitz, Attorney General of New York, attorneys; Mr. Stephen Skillman, Deputy Attorney General of New Jersey, Mrs. Ruth Kessler Toch, Solicitor General of New York, and Mr. J. Joseph Murphy, Assistant Attorney General of New York, of counsel and on the brief).
Mr. Richard D. Catenacci argued the cause for the plaintiff-respondent (Messrs. Hughes, McElroy, Connell, Foley & Geiser, attorneys; Mr. Theodore W. Geiser, of counsel).
*344 Mr. Clifford J. Sheehan argued the cause for the defendant-respondent (Messrs. Hueston & Hueston, attorneys).
The opinion of the Court was delivered by JACOBS, J.
The Appellate Division affirmed (109 N.J. Super. 152 (1970)) the Law Division's denial (103 N.J. Super. 394 (1968)) of the Palisades Interstate Park Commission's motion to set aside service and dismiss the complaint against it which had been filed by the Interstate Wrecking Co. in the Superior Court of New Jersey. We granted certification on the Commission's application. 56 N.J. 241 (1970).
Certain buildings on Iona Island in Rockland County, New York, were to be demolished preparatory to the development of the Island for recreational purposes. The Commission advertised for bids in New York and the successful bidder was the plaintiff Wrecking Company, a New Jersey corporation. The contract for the demolition was executed by the Commission and the Wrecking Company in the State of New York on February 10, 1967 and all of the work was to be done in the State of New York. The contract provided that the work would be done in compliance "with all of the laws of the State of New York" and "with the lawful directions of the officers, agents or representatives of the State." The contract set forth that the Commission was "acting for and in behalf of the State of New York" and contained additional references to New York but none to New Jersey.
The Wrecking Company completed its work in New York and has apparently been paid the full contract price from appropriations made by the New York Legislature. However, claims for extras which were submitted by the Wrecking Company to the Commission were rejected as without justification. Thereafter the Wrecking Company filed its complaint in the Superior Court of New Jersey against the Commission and Clarke & Rapuano, Inc., a New York corporation, which was the firm of consulting engineers and architects employed by the Commission to supervise the Iona *345 Island project. The complaint contained five counts. In the first three counts the plaintiff sought recovery from the Commission for the extra work done and damages for alleged misrepresentations in the pre-bid information. In the last two counts the plaintiff sought damages from Clarke & Rapuano, Inc. for alleged negligence in the preparation of the pre-bid information and deviations from standard engineering practice.
In due course the Commission moved to set aside service and dismiss the complaint on the ground that the courts of New Jersey had no jurisdiction over the subject matter of the action or the person of the defendant, Palisades Interstate Park Commission. In a supporting affidavit, primary reference was made to the terms of the interstate compact which created the Commission in accordance with New York (L. 1937, c. 170) and New Jersey (L. 1937, c. 148) legislation and congressional approval (Res. Aug. 19, 1937, c. 706, 50 Stat. 719) and to the administrative separations between New York and New Jersey insofar as park financing, personnel and operations were concerned. 103 N.J. Super. at 398-399; 109 N.J. Super. at 158-159.
Prior to 1937 New York and New Jersey cooperated through separate commissions in the maintenance of the park along the Palisades. In that year the Palisades Interstate Park Commission was established by the compact as the "joint corporate municipal instrumentality of the States of New Jersey and New York" with appropriate provision for the transfer to it of the preexisting functions and properties of the separate commissions. See L. 1937, c. 148; N.J.S.A. 32:17-1 et seq. The compact expressly provided that the newly created Commission "shall have power to sue and be sued, to use a common seal and to make and adopt suitable by-laws." N.J.S.A. 32:17-4. It further provided that "[f]or the purpose of doing business the members of the commission shall constitute a board." N.J.S.A. 32:17-4. Both the Law Division and the Appellate Division held that the quoted sue and be sued clause amounted to a consent *346 by New York that the Commission could be sued in our courts and that consequently the motion to dismiss for lack of jurisdiction over the subject matter and the person of the Commission must fail. 103 N.J. Super. at 405; 109 N.J. Super. at 158-159. Before us, the Commission asserts that the State of New York has authorized suits, such as that sought to be maintained here by the plaintiff against the Commission, in the New York Court of Claims but only in that court. See Breen v. Mortgage Commission of State of New York, 285 N.Y. 425, 35 N.E.2d 25 (1941); cf. Easley v. New York State Thruway Authority, 1 N.Y.2d 374, 153 N.Y.S.2d 28, 135 N.E.2d 572 (1956); Conklin v. Palisades Interstate Park Commission, 282 App. Div. 728, 122 N.Y.S.2d 403 (1953). It contends that the sue and be sued clause of the compact may not properly be construed as constituting a waiver by New York of its sovereign immunity or consent by it to suit outside the New York Court of Claims and that consequently the New Jersey courts may not entertain the suit sought to be maintained here by the plaintiff against the Commission.
There is little reason to doubt that when the New Jersey Legislature approved the sue and be sued clause in the compact it meant to waive sovereign immunity and to authorize suits against the Commission generally. See Strobel Steel, &c., Co. v. State Highway Com., 120 N.J.L. 298, 303 (E. & A. 1938); Karp v. High Point Park Commission, 131 N.J. Eq. 249, 250-51 (Ch.), aff'd, 132 N.J. Eq. 351 (E. & A. 1942); Taylor v. N.J. Highway Authority, 22 N.J. 454, 466-471 (1956); McCabe v. N.J. Turnpike Auth., 35 N.J. 26, 32-34 (1961); see also S.J. Groves & Sons Co. v. New Jersey Turnpike Authority, 268 F. Supp. 568, 573 (D.N.J. 1967); State v. Murphy, 36 N.J. 172, 185 (1961); Sayreville v. N.J. Highway Authority, 67 N.J. Super. 271, 273-275 (Law Div. 1961); cf. P., T. & L. Const. Co. v. Comm'r Dept. of Trans., 55 N.J. 341 (1970); Willis, et al. v. Dept. of Cons. and Ec. Dev., 55 N.J. 534 (1970); N.J.S.A. 32:17-9. In Taylor we sustained a *347 tort action against the New Jersey Highway Authority, rejecting its claim of immunity from suit; we relied directly on the sue and be sued clause and stressed not only our earlier New Jersey decisions but also the Supreme Court's decisions in Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939), Federal Housing Administration v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), and Reconstruction F. Corp. v. J.G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941). In those decisions the Supreme Court held that sue and be sued clauses in various congressional enactments creating independent federal agencies amounted to waivers of governmental immunity and consents to suit in actions sounding in tort as well as contract.
The Commission suggests that the sue and be sued clause, though broad in terms, must be viewed as restricted by other provisions in the compact which allow each state, without the concurrence of the other, to alter the delegated functions and duties within its territorial limits (N.J.S.A. 32:17-5) and to regulate the portions of the park within its territorial limits, prescribing penalties for violations of the regulations and procedures for their enforcement in the courts which it may provide for seeking such enforcement. N.J.S.A. 32:17-6(4). While these provisions clearly support the administrative separations between the states in the Commission's operations they hardly serve to narrow the breadth of the sue and be sued clause. Cf. 109 N.J. Super. at 158-159. However, as to such clauses, the Commission points out that, unlike the New Jersey courts, the New York courts have taken a confining view and have indicated that they do not authorize suits against the State of New York or its governmental commissions in forums other than the New York Court of Claims. See Breen v. Mortgage Commission of State of New York, supra, 285 N.Y. 425, 35 N.E.2d 25.
In Breen the New York Legislature created a Mortgage Commission with power to sue and be sued. An action *348 was brought against the Commission, along with a private company, in the New York Supreme Court, a trial court having general jurisdiction. On the Commission's motion, the action was dismissed but this was reversed by the Appellate Division. 260 App. Div. 753, 23 N.Y.S.2d 948 (1940). In turn, the Appellate Division's judgment was reversed by the Court of Appeals which held that the Commission was suable only in the Court of Claims. Judge Finch, speaking for all of the participating members of the Court, held that the legislative grant of the right to sue the Commission did not mean that the state had "consented to be sued for a claim against it in the Supreme Court of the State rather than in the Court of Claims." 35 N.E.2d at 27. Later New York cases proceed along the same lines, namely, that consent to sue and be sued means suit in the New York Court of Claims rather than in the New York courts of general jurisdiction or elsewhere. See Benz v. New York State Thruway Authority, 9 N.Y.2d 486, 215 N.Y.S.2d 47, 174 N.E.2d 727 (1961); Solomon v. Kennedy, 38 Misc.2d 1090, 239 N.Y.S.2d 814 (Sup. Ct. 1963); cf. Zeidner v. Wulforst, 197 F. Supp. 23 (E.D.N.Y. 1961).
Breen and the subsequent decisions of the New York Court of Appeals dealt with the meaning of sue and be sued clauses in New York enactments creating New York governmental commissions. They did not deal with compacts embodying joint legislative enactments by New York and other states. Obviously the meaning of language in such compacts cannot be permitted to rest with the courts of New York for, as well illustrated by the case at hand, the courts of the other states joining the compacts may with good reason recognize different meanings. Since the subject matter here is an interstate compact approved by Congress, its meaning must turn on federal rather than state law (109 N.J. Super. at 157-158) and under that law the sue and be sued clause is likely to receive a broad rather than a narrow construction. See Petty v. Tennessee-Missouri Bridge Com., 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); *349 Parden v. Terminal R. of Alabama State Docks Dept., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233, reh. denied, 377 U.S. 1010, 84 S.Ct. 1903, 12 L.Ed.2d 1057 (1964); cf. Keifer & Keifer v. Reconstruction Finance Corp., supra, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Federal Housing Administration v. Burr, supra, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724; Reconstruction F. Corp. v. J.G. Menihan Corp., supra, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595.
In Petty the States of Tennessee and Missouri entered into a compact which, with the approval of Congress, created a Commission to build a bridge and operate ferries across the Mississippi at specified points. The compact provided that the Commission should have the power "to contract, to sue and be sued in its own name." An employee of the Commission met his death when he was trapped in the pilot house of a ferryboat as it sank following a collision with another boat. His widow brought an action in a Federal District Court under the Jones Act charging the Commission with negligence. The District Court dismissed the action on the ground that the Commission was an agency of the States of Tennessee and Missouri and was therefore immune from tort actions. 153 F. Supp. 512 (E.D. Mo. 1957). The Court of Appeals affirmed (254 F.2d 857 (8 Cir. 1958)) but this was reversed by the Supreme Court in an opinion by Justice Douglas which embodied the views of six members of the Court on the matters pertinent here. He noted that the construction of the compact sanctioned by Congress presented a federal question rather than a matter of state law and cited the federal cases which have consistently since the 1930's broadly construed sue and be sued clauses in congressional enactments. He expressly found that the congressional approval of the sue and be sued clause in the Tennessee-Missouri compact was under conditions that made it "clear that the States accepting it waived any immunity from suit which they otherwise might have." 359 U.S. at 280, 79 S.Ct. at 789, 3 L.Ed.2d at 809.
*350 Later federal cases have generally viewed Petty as holding that an unrestricted sue and be sued clause in an interstate compact sanctioned by Congress will amount to an express waiver of sovereign immunity from suit. See Parden v. Terminal R. of Alabama State Docks Dept., supra, 377 U.S. at 186, 84 S.Ct. at 1209, 12 L.Ed.2d at 236; Lauritzen v. Chesapeake Bay Bridge and Tunnel District, 259 F. Supp. 633, 636-637 (E.D. Va. 1966), modified, 404 F.2d 1001 (1968); Cocherl v. State of Alaska, 246 F. Supp. 328, 329-330 (D. Alaska 1965). The appellant seeks to differentiate Petty and there are of course distinguishing elements. The compact here admittedly contains express provisions for unilateral actions within New York's territorial limits and, unlike the situation in Petty, New York is not suggesting a complete immunity but is seeking a construction which will permit actions, against the Commission on matters arising within the territorial limits of New York, in the New York Court of Claims but not elsewhere. While such an interpretation may be conceivable we are not, in the strong and persuasive light of our own and the federal precedents, at all inclined to reach it.
In view of all of the above, we must assume that New Jersey has ample jurisdiction to entertain the plaintiff's action against the Commission and that any ensuing judgment would be entitled to full faith and credit in New York. Cf. Durfee v. Duke, 375 U.S. 106, 109, 84 S.Ct. 242, 11 L.Ed.2d 186, 190 (1963); State v. American Can Co., 42 N.J. 32, 38, cert. denied, 379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36 (1964). But even though New Jersey jurisdiction is recognized, the question remains whether its exercise should now fairly be withheld under principles of comity (Teamsters Local No. 676 v. Port Auth. Transit Corp., 108 N.J. Super. 502 (Ch. Div. 1970); Coyle v. Port Authority Transit Corp. (PATCO), 438 Pa. 99, 263 A.2d 739 (1970)) or under the doctrine of forum non conveniens. See Gore v. United States Steel Corp., 15 N.J. 301, cert. denied, 348 *351 U.S. 861, 75 S.Ct. 84, 99 L.Ed. 678 (1954); cf. Devlin v. National Broadcasting Co., Inc., 47 N.J. 126, 129 (1966).
The appellant points out that although it has been designated in the compact as a "joint corporate municipal instrumentality" its operations have consistently recognized the territorial separations of the respective states; the park is divided into New York and New Jersey sections (N.J.S.A. 32:14-5); employees are separated into New York and New Jersey employees with divided benefits (N.J.S.A. 32:14-4); separate police and enforcement units are maintained (N.J.S.A. 32:14-20-26); and there are separate controls for acquisitions and disbursements. The appellant's brief notes that "[t]o date, by interstate cooperation, litigation emanating from New York has been remitted to the New York Attorney General and, similarly, matters involving the New Jersey section have been serviced by the New Jersey Attorney General," and that since inception, "no attempt has been made to transpose or intertwine the several liabilities of the respective States."
When the Wrecking Company entered into its contract with the Commission it undoubtedly was aware that there were vital administrative separations between New York and New Jersey and that it was dealing entirely with New York. The project was a New York one for work to be done in New York and bids were solicited in New York in accordance with prepared specifications. The Wrecking Company, as the successful bidder, entered into its contract in New York with the Commission acting for New York, the work to be paid for by New York. Thus the contract contained a provision that it shall be deemed "executory only to the extent of the moneys available therefor, and that no liability on account of the said contract shall be incurred by the State beyond the moneys available for the purposes herein." It also contained provisions that the Wrecking Company would conduct its work in compliance with the laws of New York and with the lawful directives of that State's representatives and that employment preference would be given *352 to New York citizens. Nowhere in the contract was there any reference whatever to New Jersey and there is no doubt that New York law was intended to control. Under that law, any claim by the Wrecking Company for extras would appropriately be asserted in the New York Court of Claims and there governed by the applicable principles of New York law. Cf. Pinebrook Construction Corporation v. State, 235 N.Y.S.2d 553 (Ct. Cl. 1962); Depot Construction Corp. v. State, 23 A.D.2d 707, 257 N.Y.S.2d 230 (1965), aff'd, 19 N.Y.2d 109, 278 N.Y.S.2d 363, 224 N.E.2d 866 (1967).
Under the circumstances it is evident to us that the plaintiff should have instituted its timely action in New York rather than in New Jersey where our judges would have the generally frustrating task of seeking to interpret and apply foreign law rather than their own. See Buzzone v. Hartford Accident and Indemnity Co., 41 N.J. Super. 511, 514 (App. Div. 1956), aff'd, 23 N.J. 447, 452 (1957); cf. Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 490-493 (1961). All of the pertinent documents were drawn in New York, all of the demolition occurred in New York and all of the significant witnesses would presumably come from New York. Decent regard for the convenience of all those concerned as well as for the vital administrative separations in the Commission's operations would have dictated the choice of New York rather than New Jersey as the appropriate forum. The only consideration contra is the procedural ability to join both defendants here as parties in a single proceeding whereas that might not be possible in New York. Cf. Glassman v. Glassman, 309 N.Y. 436, 131 N.E.2d 721, 724 (1956). But we are satisfied that that factor is far outweighed by the other high factors in the case all justly pointing to the withholding on our part of the exercise of jurisdiction.
At oral argument counsel indicated that the plaintiff would still have the fair opportunity of pressing its claims against the Commission in the New York Court of Claims *353 without being confronted with any technical barrier of limitations. If this should prove to be unfounded the plaintiff will have leave to obtain a reopening of our present determination. See Gore v. United States Steel Corp., supra, 15 N.J. at 313-314. Subject to this condition, the judgment entered below is set aside with direction that the complaint against the Commission be dismissed.
Reversed, without costs.
For reversal  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
For affirmance  None.