■ COSTANZA CONSTRUCTION CORP., Formerly Known as COSTANZA SIGNAL CO., INC., Appellant-Respondent, v CITY OF ROCHESTER, Respondent, and PASSERO ASSOCIATES, ARCHITECTURE, ENGINEERING, SURVEYING & LANDSCAPE ARCHITECTURE, P. C., Formerly Known as PASSERO-SCARDETTA ASSOCIATES, Respondent-Appellant and Third-Party Plaintiff, et al., Third-Party Defendant.—Order modified on the law and as modified affirmed without costs, in accordance with the following memorandum: Plaintiff was the low bidder on a public improvement contract on Alexander Street in the City of Rochester, and it was awarded the contract. It considered rock removal to be a small portion of the job, and it bid $25 per cubic yard to excavate rock, an amount which was below the actual cost. Job drawings, prepared by codefendant Passero, showed only about 20 cubic yards of rock in the area to be excavated, and specifications estimated about 100 cubic yards. In fact, over 600 cubic yards of rock were encountered. Plaintiff was paid the unit price for all rock to be removed. Special Term properly dismissed plaintiff's claims for breach of contract, negligence, breach of warranty and equitable adjustment because the parts of the contract included in the record clearly include a disclaimer by the city of any responsibility for the accuracy or completeness of information on the drawings concerning existing conditions, including rock, and obligate the contractor to satisfy itself as to site conditions and the work required. There is no merit to plaintiff's contention that the actual amount of rock found constituted a cardinal change and altered the very essence of the contract (see, Depot Constr. Corp. v State of New York, 19 NY2d 109). Plaintiff argues that its time was too limited to make an in-depth inspection and that such an inspection would have been prohibitively expensive. Nevertheless, this is what plaintiff obligated itself to do by signing the contract (see, Foundation Co. v State of New York, 233 NY 177, 184-185; Savin Bros. v State of New York, 62 AD2d 511, 515, affd 47 NY2d 934). No authority is cited for plaintiff's argument that such a contract is against public policy, and we reject it.

With respect to the cross motion of codefendant Passero, Special Term granted summary judgment dismissing Costanza's claims against it except with respect to failure to disclose a 1932 sewer map which showed additional rock. The claims against Passero allege that Costanza reasonably relied on information supplied by Passero in the contract document with respect to the presence of rock. In view of the contract language, Costanza could not have justifiably relied on any information in the documents regarding rock, no matter what the source, and summary judgment dismissing the complaint as to Passero should have been granted.

All concur, except Doerr, J. P., and Lawton, J., who dissent in part, in the following memorandum.

Doerr, J. P., and Lawton, J. (dissenting in part). We must dissent in part. The principal issue presented for determination is whether a contractor who enters into a construction contract that contains the now common exculpatory clauses is barred from obtaining equitable relief. The majority has answered affirmatively, whereas we believe that a contractor should not be so barred in all instances.

In the present case, the plaintiff contractor received an invitation to bid on a project for the construction of a sewer in the City of Rochester. While the construction plans indicated that the contractor would be required to remove 20 cubic yards of rock, the engineer as a precautionary measure increased that estimate to 100 cubic yards in the actual bid document. No special rock excavation equipment was called for in the contract documents. In actuality, the job entailed the removal of 600 cubic yards of rock. Much of the rock removed was "hard" rock, some in layers six feet thick in an area where no rock was anticipated or indicated on the contract drawings. Further, the nature and extent of the rock required the use of specialized equipment. Because of its proximity to other facilities, including utility lines, much of the rock could be removed only by manual means, six inches at a time. The excavation of rock rather than accounting for the anticipated 2% to 3% of the total excavation indicated in the contract document, ultimately accounted for 45% of the total excavation. Further, due to the methods necessary to remove the rock, the productivity of plaintiff's crew allegedly dropped 77% and substantial delays occurred in completion of the work. Plaintiff's bid for rock removal was $25 a cubic yard, for a total of $2,500, out of a total project bid of $936,000. Plaintiff alleged that the cost of the rock excavation, which was totally unanticipated and unforeseen based upon

the bid documents, was approximately $800,000. This amounts to nearly the entire project bid, rather than the less than 1% contemplated and bid on this item. Plaintiff's request for additional time and moneys was denied by the city and the contract was terminated.

The city does not dispute plaintiff's factual allegations, but argues that it is afforded protection from such claims by the exculpatory clauses and the unit price provision of the contract. Plaintiff argues in part that the exculpatory clauses are unfair and should be disallowed as a matter of public policy. The courts have rejected this argument, as is demonstrated by decisions of the Court of Appeals giving them full effect *(see, e.g., Depot Constr. Corp. v State of New York,* 19 NY2d 109; *Foundation Co. v State of New York,* 233 NY 177). That rejection does not, however, in our opinion amount to a total denial of the availability of any equitable relief, regardless of the factual circumstances. Strong policy considerations require that contracts be enforced as written; nevertheless, there may come a point at which the contract entered into between the parties is no longer valid in light of the work required to be performed *(see, Elia Bldg. Co. v New York State Urban Dev. Corp.,* 54 AD2d 337). Some contracts even anticipate unforeseen contingencies by providing for alternative relief if the actual work required differs from that estimated by a certain percentage variable *(see, e.g.,* 40 CFR 35.938-5).

Protection against unforeseen variances between estimated and actual quantities is often provided for by the employment of unit price bids, such as contained in the present contract. Where, however, the differential between the estimated and actual quantities becomes disproportionate, courts have recognized that the unit price provision is not always adequate protection *(see, Tufano Contr. Corp. v State of New York,* 25 AD2d 329). There may be instances where unforeseen events are so different from those reasonably anticipated by the contracting parties that the contract is no longer viable *(see, e.g., Allied Materials & Equip. Co. v United States,* 569 F2d 562). This may be just such a case. If, as plaintiff alleges, minimal rock interference was contemplated by the parties, but layers of "hard" rock up to six feet deep along the course of the route of the pipeline were actually encountered, which escalated the costs of removal of the rock from the bid price of $2,500 to nearly $800,000, or from but 1% of the total cost of the project to an amount nearly equal to the entire estimated price, then this difference should no longer be covered by the contract.

The Court of Appeals in the very recent case of *Kalisch-Jarcho, Inc. v City of New York* (72 NY2d 727) obliquely touched upon the issue of whether a change in work is ever sufficient to negate a contract. In *Kalisch,* the issue was whether a contractor who had been ordered to perform additional work under a contract was entitled to bring a declaratory judgment action to determine if the work ordered to be performed under the contract was so different from that contracted for that there was a danger that the contractor would be precluded from recovery under the principles enunciated in *Borough Constr. Co. v City of New York* (200 NY 149). Judge Kaye, in an opinion speaking for a unanimous court, set forth a very high standard to apply in determining whether the work required was within the contemplation of the contract. We believe that a similar high standard should apply to construction contracts such as the one entered into between the parties herein in determining whether equitable relief should be granted. In our view, a contractor would be entitled to equitable relief only if it can be shown that " 'enforced compliance by the contractor [would be] so onerous and damaging to the contractor, that the result of compliance with the literal language of the contractual provisions would be unconscionable' " *(Kalisch-Jarcho, Inc. v City of New York, supra,* at 736).

Whether a contractor seeking such relief meets this heavy burden is for the court sitting in equity to determine. We believe that plaintiff has sustained its initial burden to submit facts sufficient to deny defendant's motion for summary judgment and should be given the opportunity to develop this theory of recovery at trial. Not only was the bid proposal grossly in error in this case, but the city's engineer agreed that no prospective contractor could reasonably be expected to conduct its own drill borings to inform itself of the actual subsurface condition.

To hold as does the majority is to sanction possible economic ruin of a good-faith bidder which, through no fault of its own, was faced with unforeseeable circumstances against which it could not have reasonably protected itself. Equity requires more than that. (Appeals from order of Supreme Court, Monroe County, Tillman, J.—summary judgment.) Present—Doerr, J. P., Boomer, Pine, Balio and Lawton, JJ.