PAUL MULLEN, AN INFANT, BY CHRISTOPHER MULLEN, HIS NEXT FRIEND, AND CHRISTOPHER MULLEN, INDIVIDUALLY, RESPONDENTS, v. BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX, APPELLANT.

Argued May 26, 1930—Decided February 2, 1931.

For the appellant, *Arthur T. Vanderbilt*.

For the respondents, *Joseph C. Cassini*.

The opinion of the court was delivered by ·

LLOYD, J.   The action in this case was to recover damages for injuries received by a small boy through falling down an opening under a bridge railing in the city of East Orange. Originally brought against that city and the board of freeholders of Essex county, the city was dropped out and the case proceeded to a finality against the freeholders alone, and resulted in verdicts against that body in favor of the injured boy and his father.

The defendant appeals and contends that there was error in the rulings of the court on a motion of the defendant to dismiss the complaint and in the refusal of the defendant's motions for a nonsuit and for a direction of a verdict in its favor.

The action appears to have been instituted and liability predicated on the Bridge act of 1918, chapter 185, page 609, section 1309 of which provides that—

"In all cases where the board of chosen freeholders of a county, or boards of chosen freeholders of two or more counties, are .chargeable by law with the construction, erection,

rebuilding or repair of any viaduct or bridge, and the said board or boards shall wrongfully neglect to perform their duty in that behalf, by reason whereof any person or persons shall receive injury or damage in his, her or their persons or property, such person or persons may bring an action at law against said county or counties and recover judgment to the extent of all such damage sustained as aforesaid."

It was contended on the motions for nonsuit and direction, and is contended here, first, that there was no proof that the board of freeholders was in anywise chargeable by law with the "construction, erection, rebuilding or repair" of the bridge; and second, that no proof was produced that the accident was due to any defects in such construction, erection, rebuilding or repair. The plaintiffs, under the pleadings, were put upon their proofs on these controverted issues.

As to the first, no evidence was presented, the only proof being that this was a bridge continuing a street across a small stream in the city of East Orange. Respondent urges, however, that section 1301 of the Bridge act (*supra*) establishes the freeholders' responsibility for the repair of the bridge. We do not so read it. While this section confers power on the boards of freeholders to build or acquire and maintain bridges in their respective counties, it imposes no obligation to exercise this power.

For the bridge the board of freeholders might or might not be responsible. There have been and no doubt still are, many bridges in the state other than those as to which the boards of freeholders have assumed or are chargeable with responsibility. We think there was a failure in the proofs on this phase of the case.

As to the contention that the accident which happened was not due to any defect or want of repair of the bridge itself, we think it is without merit. The proofs were that the bridge was a stone structure with iron railings extending along either side of the bridge its entire length and over the stone abutments. Under this railing at one end of the bridge there had been worn a hole leading down to the edge of the stream

and it was through this hole that the boy fell. In the case of *Kearney* v. *Ballentine,* 54 *N. J. L.* 194, 197, a bridge was defined as the "structure reaching from one side of a stream to the other with its proper foundations or abutments." In the present case there were no approaches, the construction being but a continuance on the same level of an existing highway, and we think the proofs could fairly be construed as establishing that the accident was due to the faulty condition of the bridge within the definition thus stated. On this phase of the case the motions were properly denied.

So, also, with respect to like motions in the case of the boy's father, which were based on the claim that there was no proof of actual damage. It was shown that the boy was taken home immediately after the accident, was attended by a physician, and the next day taken to the hospital where he remained four or five days. He was then taken home, was cared for by a nurse and attended by another physician. He was kept in his crib for a period of six months. For the reasonable expense incident to his cure and care the father was responsible. It is clear that a nonsuit or direction could not be granted on the ground that the father had not sustained any loss.

The motion addressed to the complaint as subsequently amended was properly denied.

The judgment is reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.