101 N.J. Super. 263 (1968)
244 A.2d 141
WILMA E. MUENCH AND PAUL MUENCH, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
MEDFORD LAKES COMPANY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1967.
Decided June 7, 1968.
*264 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. James M. Davis, Jr. argued the cause for plaintiffs-appellants (Messrs. Powell & Davis, attorneys).
*265 Mr. Michael A. Orlando argued the cause for defendant-respondent County of Burlington (Messrs. Orlando & Cummins, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff Wilma E. Muench suffered serious injuries on the night of May 4, 1962 while walking on the left (east) side of Lenape Trail in the Borough of Medford Lakes. She stepped aside to avoid an oncoming car and fell several feet to the bed of a stream which ran beneath the road. In the subsequent suit to recover for her injuries and her husband's per quod damages, there were dismissals as to all the named defendants except the County of Burlington (county). The jury returned a verdict of no cause of action in favor of the latter and plaintiffs appeal.
Plaintiffs reside on Lenape Trail, Medford Lakes, about .6 of a mile from the scene of the accident. From the testimony the jury could have found that Lenape Trail was a municipally maintained street about one mile in length running in a general north-south direction which crossed a stream known as Ballinger Creek by means of a structure maintained by the county which was designated on the county engineer's bridge record as Bridge No. D5.133.
According to the record in question, the crossing over the stream originally had been by means of a timber stringer bridge, 14 feet long, with stone abutments and wings, a wooden deck and wooden guardrails. In 1927 the wooden bridge was replaced by 40 feet of 36" corrugated pipe, surmounted by an earthen fill retained by concrete head walls. By the time of the accident a 36" concrete pipe had been (prior to 1952) substituted and the retaining wall was constructed of concrete topped by Belgian blocks. The water in the creek had an approximate depth of 1 1/2 feet at the time of the accident. There was a low wooden dam where the creek entered the pipe. There was no railing on the east side of Lenape Trail at the point where Mrs. Muench allegedly fell.
*266 The right-of-way of Lenape Trail was 66 feet wide. The traveled portion was two lanes wide, improved with an oiled surface and marked with a center line (which corresponded with the center of the right-of-way) at the point where it crossed the creek. The pipe was apparently not centered in the right-of-way, the center line of the road being 15 feet from the head wall on the east side and 26 feet from the corresponding head wall on the west. Prior to the accident, the last inspection of the structure by the county engineer's office had taken place in 1952.
On the evening of the accident, shortly past midnight, Mrs. Muench was walking in a southerly direction on the east side of Lenape Trail towards her home. As she was proceeding a car approached her from the south traveling fast. It passed so closely that she was forced to step aside, and in doing so fell down the bank beyond the retaining wall into the creek. The street was not lighted, there was no sidewalk and the foliage was heavy and close to the road.
Although the pretrial order had listed as issues "negligence, contributory negligence, governmental immunity, contribution, ownership of bridge and Lenape Trail, dominion and control of the bridge and Lenape Trail," the case was submitted to the jury on the plaintiffs' theory that the county had been negligent in the performance of its duty under the Bridge Act, R.S. 27:19-1 et seq., and the charge was keyed to that statute.
R.S. 27:19-1 provides:
"The board of chosen freeholders may construct, or acquire by gift, purchase or condemnation, and maintain and operate, and widen when necessary, viaducts and bridges, including drawbridges, in the county, when and where the public convenience requires, and keep all viaducts and bridges wholly within the county in repair and in safe condition for public travel." (Emphasis added)
Prior to 1860 no action could lie by an individual against a county for injuries sustained in consequence of the failure to keep a county bridge in repair. Board of Chosen Freeholders *267 of Sussex County v. Strader, 18 N.J.L. 108 (Sup. Ct. 1840). In that year the Legislature enacted a supplement to the Bridge Act which later became R.S. 27:19-10. It now provides:
"If the board of chosen freeholders of a county, or boards of chosen freeholders of two or more counties, are chargeable by law with the construction, erection, rebuilding or repair of a viaduct or bridge, and shall wrongfully neglect to perform their duty in that behalf, by reason whereof a person shall receive injury or damage to his person or property, he may bring an action at law against the county or counties and recover judgment to the extent of the injury or damage sustained." (Emphasis added)
The case was tried before the judge and a jury. Over plaintiffs' objection, and in the face of a request to charge to the contrary, the trial judge left it to the jury to determine whether the structure in question was a bridge or viaduct within the intendment of the statute. The jury returned a verdict for defendant which was sustained on plaintiffs' motion for a new trial.
Initially, appellants contend that under the evidence the issue of whether the structure was a bridge or viaduct as contemplated by the cited statute was a question of law for determination by the court. We are in agreement. The facts bearing upon the issue were not in dispute. The structure was fully described; its uses and function were obvious. Whether it was such a structure as came within the statute and thus called for the exercise of reasonable care by the county (providing the jury found it had constructed or assumed to maintain it) was for the court. It was error to submit this question of law to the jury for factual determination.
We turn next to consideration of the basic question, i.e., whether, as appellants contend, the statute was applicable to the structure in question. If it was not, plaintiffs suffered no prejudice by the improper submission of the issue to the jury.
At the trial, liability under the statute was resisted by the county on the ground, inter alia, that the structure was *268 not a bridge but a culvert. A culvert has been generally defined as a transverse drain or waterway under a road, railroad, canal, etc., Webster's New International Dictionary (2d ed. 1950). Although such a structure has sometimes been held to be synonymous with a bridge, Central Bridge and Construction Co. v. Saunders County, 106 Neb. 484, 184 N.W. 220, 223 (Sup. Ct. 1921), the weight of authority appears to be to the contrary, Board of Commissioners of Carroll County v. Bailey, 122 Ind. 46, 23 N.E. 672 (Sup. Ct. 1890); Cleveland v. Town of Washington, 79 Vt. 498, 65 A. 584, 585 (Sup. Ct. 1907); Williamson v. Hossley, 127 Miss. 505, 90 So. 184 (Sup. Ct. 1922); Floyd County v. Stewart, 97 Ga. App. 67, 101 S.E.2d 879 (Ct. App. 1958).
Generally, the word "culvert," as distinguished from "bridge," has been applied to a pipe or sluiceway under a road utilized principally to carry off surface water. However, the structure here involved was much more than a culvert and certainly performed all of the functions of a bridge. The latter has been defined as a structure erected over a depression or obstacle, as over a river, chasm, roadway, railroad, etc., carrying a roadway for passengers, vehicles, etc., Webster's New International Dictionary (2d ed. 1950). See Robinson v. Board of Chosen Freeholders of Passaic County, 91 N.J.L. 154 (E. & A. 1917); Whitall v. Board of Chosen Freeholders of Gloucester County, 40 N.J.L. 302 (Sup. Ct. 1878). Here the structure spanned Ballinger Creek which connected with a branch of Rancocas Creek which flowed into the Delaware River and through Delaware Bay to the ocean.
It is doubtful whether in 1860, when § 10 was enacted, structures of this type were in general use for the purpose of spanning streams of the size of Ballinger Creek. However, engineering has made much progress in the interim and now it is not unusual to find a wooden or steel structure replaced by a large pipe or a series of such pipes which permit the free passage of a stream while eliminating the maintenance problems of the old structure. The illustration which accompanies the definition of a culvert in Webster's New World *269 Dictionary of the American Language (1959) shows a concrete or stone arch bridge carrying a road over a stream. Webster's New International Dictionary (1961) now gives as an alternate definition of a culvert "a bridge over a culvert" (emphasis added).
As noted, passage over Ballinger Creek had been accomplished until 1927 by use of a wooden timber bridge equipped with railings. Had that bridge remained in service the county undoubtedly would have continued liable for negligence in its maintenance. The county's inspection record indicated that substantial repairs were needed and contemplated in 1927. The jury could have found that in lieu thereof the county elected to substitute the present structure. It contained an earth fill retained by headwalls in place of the old bridge deck, but lacked any equivalent of the guardrails which had been part of the old structure. It can hardly be denied that if guardrails had been furnished or the headwalls had been built up sufficiently high to perform that function, the structure would have qualified as a stone bridge spanning the stream. Cf. Mullen v. Board of Chosen Freeholders of Essex County, 107 N.J.L. 301 (E. & A. 1931). We see no reason to hold that, because of the absence of such guardrails, it was any less a bridge, especially since the jury could have found that the absence of a guardrail was one of the causes of plaintiff's fall. It would be a departure from logic to permit the county to avoid the liability imposed by law upon it through what the jury could have found was a form of neglect against which that very law was intended to protect the traveling public.
By reason of the foregoing we are satisfied and hold that the structure in question was a bridge or viaduct as contemplated by § 10 of the Bridge Act. Here, in contrast with B.W. King, Inc. v. Town of West New York, 49 N.J. 318, 325 (1967), the Legislature has spoken and evidenced its clear intent that governmental immunity shall not apply in cases involving county bridges. Monaco v. Comfort Bus Lines, Inc., 134 N.J.L. 553 (E. & A. 1946). In *270 King the court held "the analytical approach ought not to be one of asking why immunity should not apply in a given situation but rather one of asking whether there is any reason why it should apply." 49 N.J., at p. 325. Here, we see no reason why the Legislature's positive declaration of duty should not apply.
The trial judge should have instructed the jury as a matter of law that the structure in question was a bridge, leaving it to the jury to factually determine whether the county was responsible for its construction or maintenance, whether it exercised reasonable care in doing so, and if it did not, whether its lack of due care contributed to the occurrence complained of and the injuries which followed. The omission to do so was error which requires reversal.
Turning to the remaining points raised, we are satisfied that plaintiffs' motion for direction of a verdict in their favor on the issue of liability was properly denied, Mullen, supra, at p. 307, and that the issue of Mrs. Muench's contributory negligence was for the jury. We find it unnecessary to pass upon plaintiffs' contention that an endorsement on the county's liability insurance policy precluded the raising of the defense of governmental immunity unless the County expressly requested the carrier to raise it. Cf. Hughes v. County of Burlington, 99 N.J. Super. 405, 414-15 (App. Div. 1968), certification denied 51 N.J. 575. Here the case was tried solely on the theory that the county was liable under § 10 of the Bridge Act, the existence and terms of the policy were not in issue, and there was no evidence adduced bearing thereon.
The judgment of the Law Division is accordingly reversed and the cause remanded for a new trial.