Joseph **KOZIKOWSKI**

v.

**DELAWARE RIVER PORT AUTHOR-
ITY** and Volkswagen of America, Inc.,
jointly, severally and/or in the alterna-
tive Volkswagenwerk Aktiengesellschaft

v.

**MODJESKI AND MASTERS–AMMANN
AND WHITNEY ENGINEERS**, joint
venture, and William Dix.

Joseph **KOZIKOWSKI, Jr.**, et al.

v.

**DELAWARE RIVER PORT AUTH-
ORITY** et al.

Civ. A. Nos. 1166–71, 1875–71.

United States District Court,
D. New Jersey.

July 3, 1975.

Thomas A. Lunn by Louis R. Meloni, Camden, N. J., for Joseph Kozikowski.

Bocco & Sandone, Haddonfield, for Joseph Kozikowski, Jr., and others.

Kisselman, Deighan, Montano & Summers, Camden, N. J., for Volkswagen of America, Inc., and others.

Hanlon, Amdur & Hanlon, Oakhurst, N. J., for Volkswagenwerk Aktiengesellschaft.

Cooper, Perskie, Neustadter & Katzman, P. A. by Harry Miller, Atlantic City, N. J., for Modjeski and Masters-Ammann and Whitney, Engineers.

Roy D. Cummins, Pennsauken, N. J., Alexander Feinberg, Cherry Hill, N. J., for Delaware River Port Authority.

## OPINION

BROTMAN, District Judge.

On August 9, 1970 Joseph Kozikowski, Sr., while operating a Volkswagen automobile on the Walt Whitman Bridge between the states of Pennsylvania and New Jersey, became involved in a head-on collision with one William Dix. Lucie Kozikowski and her three minor children were passengers in her husband's automobile at the time of the accident.

Joseph Kozikowski, Sr. instituted suit against the Delaware River Port Authority (hereinafter referred to as DRPA or the Authority), which operated the bridge, and Volkswagen of America, Inc. and Volkswagenwerk Aktiengesellschaft (hereinafter jointly referred to as Volkswagen) the distributor and manufacturer respectively of the automobile. (Civil Action No. 1166–71). Jurisdiction is alleged to exist by virtue of diversity of citizenship between the parties. 28 U.S.C. § 1332.

Kozikowski alleges, *inter alia*, that defendant DRPA was negligent in its design, construction, maintenance and control of the bridge. Further he alleges, *inter alia*, that defendant Volkswagen designed, manufactured and distributed a defective automobile. In addition, a complaint, which generally makes the same allegations, was filed against the defendants by Lucie Kozikowski, individually and as guardian ad litem for the three minor Kozikowski children. (Civil Action No. 1875–71). By order of the court the two actions were consolidated.

Defendant DRPA filed a third party complaint against Modjeski and Masters-Ammann and Whitney Engineers, joint venture. The third party com-

plaint alleges that DRPA entered into a contract with the third party defendant on September 24, 1952. The contract provided that the third party defendant was responsible for the design, inspection, and supervision of construction of the bridge, as well as the testing of materials used in its construction. By virtue thereof DRPA alleges that it should be indemnified for any loss it might suffer, should plaintiff prevail on its cause of action.[1]

At this pretrial stage in the proceedings, three motions are before the court for decision. The first question raised is whether the court has jurisdiction over this case, and if so, on what basis. Should the court decide it has jurisdiction, it then must decide plaintiff's motion to strike defendant DRPA's defense of immunity from suit and the third party defendant's motion for summary judgment based upon the Statute of Limitations, N.J.S.A. 2A:14–1.1.

■ The court raised the jurisdictional issue *sua sponte*. Plaintiffs are all residents of Pennsylvania. Defendant DRPA is a bi-state agency created by virtue of a compact entered into between the Commonwealth of Pennsylvania and the State of New Jersey. N.J.S.A. 32:3–1 *et seq.*; 36 P.S. § 3503. This compact was approved by Congress, as required by the United States Constitution, Article I, § 10, cl. 3. 47 Stat. 308; 66 Stat. 738.[2] Because DRPA is incorporated in both Pennsylvania and New Jersey, and plaintiff is a citizen of Pennsylvania, a question arises as to whether the complete diversity requirement of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) has been met.[3]

The court, in response to its question, determines that diversity jurisdiction exists under the forum doctrine first recognized by the Supreme Court in *Chicago & Northwestern Ry. Co. v. Whitton*, 80 U.S. (13 Wall.) 270, 20 L.Ed. 571 (1872). In *Whitton, supra*, suit was brought in Wisconsin by an Illinois citizen against a corporation which had been incorporated in both Wisconsin and Illinois. A unanimous Court rejected the challenge to diversity jurisdiction, stating:

> But it is said, and here the objection to the jurisdiction arises, that the defendant is also a corporation under the laws of Illinois, and, therefore, is also a citizen of the same state with the plaintiff. The answer to this position is obvious. In Wisconsin the laws of Illinois have no operation. The defendant is a corporation, and as such a citizen of Wisconsin by the laws of that state. It is not *there* a corporation or a citizen of any other state. Being there sued it can only be brought into court as a citizen of that state, whatever its status or citizenship may be elsewhere. (emphasis in original) *Id.* at 283.

*See also Muller v. Dows*, 94 U.S. 444, 447–48, 24 L.Ed. 207 (1876).

---

1. Plaintiffs also filed direct actions against the joint venture. Summary judgment on these actions was granted in favor of the joint venture by virtue of N.J.S.A. 2A:14–1.-1, the Statute of Limitations. (Civil No. 1371–72).

2. Congress first approved the compact in 1932. In 1952 Congress approved a supplemental compact which provided, *inter alia*, for the change to the Authority's present name from the Delaware River Joint Commission. It also provided for the construction of the Walt Whitman Bridge, upon which the accident here at issue occurred. (Article I, (f)). N.J.S.A. 32:3–2(f); 36 P.S. § 3503.

3. Speaking for the Supreme Court in *Strawbridge v. Curtiss, supra*, Chief Justice Marshall said:

> The words of the act of Congress are, "where an alien is a party, or the suit is between a citizen of a state where the suit is brought, and a citizen of another state." The court understands these expressions to mean, that each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued, in the federal courts. That is, that where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued, in those courts.

The forum doctrine provides "that for jurisdictional purposes a multi-state corporation must be regarded in each state of its incorporation as solely domesticated therein so that in consequence a citizen of another state can sue such a corporation under the diversity jurisdiction in a state where it is incorporated, even though the corporation is also organized under the laws of the state of the plaintiff's citizenship." *Seavey v. Boston & Maine R. R.*, 197 F.2d 485, 487 (1st Cir. 1952), cited with approval in *Jacobson v. New York, N. H. & H. R. Co.*, 206 F.2d 153, 154–55 (1st Cir. 1953), *aff'd mem.* 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067 (1954).[4] Stated more simply, the forum doctrine applies where a citizen of X sues a corporation incorporated in X and Y in Y.

Although the Supreme Court has never overruled the forum doctrine, some commentators have questioned the doctrine's continuing validity in light of a 1958 amendment by Congress to the Judicial Code. 1 *Moore's Federal Practice (MFP)* (2nd Ed.) §§ 723.50–723.58; Wright, *The Law of Federal Courts* (2nd Ed.) § 27; Note, 72 Harv.L.Rev. 391, 394–395 (1958). That amendment provides, in pertinent part:

> For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of *any State* by which it has been incorporated and of the State where it has its principal place of business . . . .
> 28 U.S.C. § 1332(c) (emphasis added).

Essentially, the argument made is that "any State" means every state. Conse-

quently, it is argued that a corporation should be treated as a citizen of each state in which it is incorporated. *MFP, supra.*

But, in the one case subsequent to the 1958 amendment which specifically decided whether the forum doctrine continued to be a viable doctrine, it was held that the 1958 amendment did not abrogate the doctrine. *Hudak v. Port Authority Trans-Hudson Corp.*, 238 F. Supp. 790 (S.D.N.Y.1965). *See also Majewski v. New York Central Railroad Company*, 227 F.Supp. 950 (W.D.Mich. 1964). *Hudak, supra*, presented jurisdictional facts nearly identical to those pleaded in the instant case. In *Hudak, supra*, plaintiff, a resident of New Jersey, brought suit in the Southern District of New York against Port Authority Trans-Hudson Corp. (PATH), a subsidiary corporation of the Port of New York Authority (the Authority). The Authority, like the DRPA, is a body corporate which was created by virtue of a Congressionally approved compact between the States of New Jersey and Pennsylvania.[5]

The *Hudak* court, *supra* at 792, rejected the interpretation given the 1958 amendment to 28 U.S.C. § 1332 by Moore and others, stating:

> There was no consideration by Congress of the multiple incorporation problem; the sole interest of Congress was in preventing a corporation sued in the state of its principal place of business from removing to the federal court on the ground, valid before the 1958 amendment, that it was incorpo-

---

4. In *Seavey, supra*, at 486–488, the First Circuit consciously adopted a position contrary to that adopted by the Third Circuit in *Gavin v. Hudson & Manhattan Railroad Company*, 185 F.2d 104 (3rd Cir. 1950). In *Gavin, supra*, Judge Goodrich denoted the anomalous situation created by application of the forum doctrine. A New Jersey resident could sue a corporation incorporated in New York and New Jersey in federal court in New York. Nevertheless, logic notwithstanding, if the same suit were brought in New Jersey, the situation presented in *Gavin*, it would be barred under the forum doc-

trine. Judge Goodrich observed that the forum doctrine failed "to satisfy the untechnical requirements of ordinary common sense." *Id.* at 105–106. The common sense approach suggested in *Gavin, supra*, was implicitly rejected by the Supreme Court in *Jacobson, supra*. Subsequent thereto the Third Circuit recognized that *Gavin, supra*, was no longer good law. *DiFrischia v. New York Central Railroad Co.*, 279 F.2d 141, 143 (3rd Cir. 1960).

5. See Article I of the compact. N.J.S.A. 32:3–2; 36 P.S. § 3503.

rated in another state. 104 Cong.Rec. 12683–12690 (1958); 2 U.S.Code Cong. & Ad.News (1958) pp. 3099–3136. It may also be noted that the 1958 amendment uses the phrase "any State" as opposed to "every State"; had Congress used "every State" the meaning would be clear but "any State" is equivocal to say the least. See Friedenthal, New Limitation on Federal Jurisdiction, 11 Stan.L.Rev. 213, 238 (1959). But see *id.* at 240 n. 136. See also Note, 48 Iowa L.Rev. 410, 421–422 (1963); Note, 58 Colum.L.Rev. 1287, 1299 (1958). Contra, Cowen, Federal Jurisdiction Amended, 44 Va.L.Rev. 971, 975 (1958); Note, Harv.L.Rev. 391, 394–395 (1958).

*See also Jaconski v. McCloskey,* 167 F. Supp. 537, 540 (E.D.Pa.1958); *Fitzgerald v. Southern Railway Co.,* 176 F.Supp. 445, 446 (S.D.N.Y.1959). Continuing, the *Hudak* court noted:

> [A]bsent any evidence of an intent by Congress to change pre-existing law, there seems no reason for a District Court to put aside that law so clearly established. In the case at bar, there are no considerations of policy or otherwise to make that course desirable. . . . There is nothing forced or technical or of historical accident in the incorporation of Path in New York as well as New Jersey. Path exists by virtue of a voluntary agree-

ment between New York and New Jersey; it has important property here; its principal place of business is here. Plaintiff is an individual citizen of New Jersey. There is diversity jurisdiction . . . . 238 F.Supp. at 792.

This court is similarly disinclined to repudiate the forum doctrine. Accordingly, it holds that § 1332 vests it with jurisdiction to hear this case.

Consequently the question whether this court also has federal question jurisdiction,[6] because the construction of a Congressionally approved compact necessarily involves a federal question, need not be considered here.[7]

■ The DRPA asserts (in its second separate defense) that it is immune from suit:

> The design, construction, maintenance and control of the Bridge in question was a discretionary act of a body politic of the Commonwealth of Pennsylvania and the State of New Jersey, which action is not subjected to test by the Judicial Branch of Government either by way of a tort action or otherwise . . . .

The compact contains a "sue and be sued" clause.[8] The issue to be resolved, therefore, is whether this clause operates as a waiver of any claim of immunity from suit. This issue must be resolved according to federal law.[9]

6. 28 U.S.C. § 1331(a) provides:
 The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

7. Presented with jurisdictional facts identical to those present in this case, this court has exercised federal question jurisdiction. *Yancoskie v. Delaware River Port Authority,* 385 F.Supp. 1170 (D.N.J.1974), *appeal docketed,* No. 75–1142, 3rd Cir., Feb. 18, 1975. A similar result was reached by the Ninth Circuit in *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 507 F.2d 517 (9th Cir. 1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975).

8. The supplemental compact approved in 1952 vested the DRPA with this power. Article IV, (b). 66 Stat. at 740; N.J.S.A. 32:3–5(b); 36 P.S. § 3503. The same power had been given to the DRPA's predecessor agency when the original compact was approved. Article IV, (b). 47 Stat. at 310.

9. In the ordinary diversity case this issue would be resolved according to the law of the forum state, here New Jersey. *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Harris v. Pennsylvania Turnpike Commission,* 410 F.2d 1332, 1334–1335 (3rd Cir. 1969), *cert. denied,* 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1970); *O'Neill v. Commonwealth of Pennsylvania,* 459 F.2d 1, 2 (3rd Cir. 1972); *S. J. Groves & Sons Co. v. New Jersey*

In *Petty v. Tennessee-Missouri Bridge Commission*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959) the Supreme Court had before it a "sue and be sued" clause in an interstate compact approved by Congress. The Court held that the Commission and its sponsoring states, had, by entering into the Congressionally approved compact, waived any immunity from suit that it might otherwise assert. *Petty, supra* at 280, 79 S.Ct. 785. The Court noted, *supra,* that the compact was "approved by Congress in 1949 . . . in an era when the immunity of corporations performing governmental functions was not in favor in the federal field." *Id.* The DRPA was also approved by Congress in the same era.[10] Further, the Court in *Petty, supra* at 277–278, 79 S.Ct. 785, paid particular attention to a proviso in the compact virtually identical to that found when Congress approved the compact involved here. That latter proviso conditioned Congressional approval, providing that "nothing therein contained shall be construed to affect, impair, or diminish any right, power, or jurisdiction of the United States or of any court, department, board, bureau, officer, or official of the United States, over or in regard to any navigable waters, or any commerce between the States . . . ." 66 Stat. at 747. Acceptance of this condition by Pennsylvania and New Jersey barred any later claim of immunity, as the following language from *Petty, supra* at 281–282, 79 S.Ct. at 790, makes clear:

> The States who are parties to the compact by accepting it and acting under it assume the conditions that Congress under the Constitution attached. So if there be doubt as to the meaning of the sue-and-be-sued clause in the setting of the compact prior to approval by Congress, the doubt dissipates when the condition attached by Congress is accepted and acted upon by the two States.

Consequently, the "sue and be sued" clause operates as a waiver of any claim of immunity from suit.[11]

Finally, the third party defendant's motion for summary judgment against defendant DRPA based upon the Statute

---

Turnpike Authority, 268 F.Supp. 568, 571 (D.N.J.1967). But, the construction of a Congressionally approved compact presents a question of federal, not state law. *Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 278, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), as does the resolution of any immunity which DRPA may claim under the Eleventh Amendment. *Groves, supra.* Even though jurisdiction is founded on diversity of citizenship, where, as here, "a federal matter [is] presented, . . . federal law controls." *Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583 (3rd Cir. 1975).

10. See n. 2, *supra.*

11. As noted (see n. 9, *supra*) the immunity question has been resolved according to federal law. Nevertheless, deference to state law may be shown here. *Petty, supra* at 278, n. 4, 79 S.Ct. 785.

In this regard, New Jersey law does not suggest a contrary result. *Taylor v. New Jersey Highway Authority,* 22 N.J. 454, 126 A.2d 313 (1956) held that a "sue and be sued" clause made the New Jersey Highway Authority amenable to suit. Even more persuasive is *Interstate Wrecking Co. v. Palisades Interstate Park Commission,* 57 N.J. 342, 273 A.2d 10 (1971), which, like the instant case, involved a Congressionally sanctioned interstate commission. Holding that the Commission was amenable to suit, the New Jersey Supreme Court said:

> There is little reason to doubt that when the New Jersey Legislature approved the sue and be sued clause in the compact it meant to waive sovereign immunity and to authorize suits against the Commission generally. 57 N.J. at 346, 273 A.2d at 12.

*Strobel Steel Construction Company v. State Highway Commission,* 120 N.J.L. 298, 303, 198 A. 774, 776–777 (E. & A. 1938) sheds light on the interpretation to be given the "sue and be sued" clause found at N.J.S.A. 32:3–5 :

> If the legislature intended that the Highway Commission . . . might be sued, it could have said so in plain and explicit language as it did when creating . . . [the] Delaware River Joint Commission, *Idem.,* 32:3–5 . . . [where] after stating that the . . . commission was created a body politic, the words "with power to sue and be sued," or their equivalent, are found.

of Limitations, N.J.S.A. 2A:14–1.1 must be decided.[12] Briefly stated, the undisputed facts are these. On September 10, 1952 the joint venture submitted to DRPA a proposal for performing certain engineering services in connection with the design and supervision of construction of the Walt Whitman Bridge. On September 24, 1952 the DRPA by resolution accepted the proposal. The joint venture completed its work on May 16, 1957. Final payment was made on January 21, 1959. At no time since that date has the joint venture performed any work on the bridge or otherwise controlled or maintained the bridge.

■ The accident which is the subject matter of this lawsuit occurred on August 9, 1970. The consolidated actions were filed on August 5, 1971 (Civil Action No. 1166–71) and December 15, 1971 (Civil Action No. 1875–71) respectively. N.J.S.A. 2A:14–1.1 provides:

No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for any injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.

Although this statute took effect on May 18, 1967, it applies to construction completed before that date. *Salesian Society v. Formigli Corporation*, 120 N.J.Super. 493, 502–503, 295 A.2d 19, 24–25 (Law Div.1972), *aff'd* 124 N.J.Super. 270, 306 A.2d 466 (App.Div.1973).

■ Initially it must be determined whether a bridge is "an improvement to real property." Under *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) this issue must be decided in accordance with state law. In *Freeholders of Monmouth v. Red Bank & Holmdel Turnpike Co.*, 18 N.J.Eq. 91, 94 (1866) the Court said: "a bridge, like a castle, is *land*." (emphasis in original). A "bridge" was defined in *Muench v. Medford Lakes Company et al.*, 101 N.J.Super. 263, 268, 244 A.2d 141, 144 (App.Div.1968), *certification denied*, 52 N.J. 495, 246 A.2d 454 (1968) as

*a structure erected* over a depression or obstacle, as *over a river*, chasm, roadway, railroad, etc., *carrying a roadway for passengers, vehicles, etc.*, Webster's New International Dictionary (2d ed. 1950). (emphasis added)

A bridge is part of the highway or road to which it is connected. *Whitall v. Freeholders of Gloucester*, 40 N.J.L. 302, 305 (1878). Recently, it has been stated that "road construction is an improvement to real property within the meaning of N.J.S.A. 2A:14–1.1. *Rosenberg v. North Bergen*, 61 N.J. 190, 198, 293 A.2d 662 (1972)." *Richards v. Union Building and Construction Corp.*, 130 N. J.Super. 127, 129–130, 325 A.2d 831, 832

12. As previously noted, the plaintiff instituted a direct action against the joint venture. In that action the joint venture's motion for summary judgment based upon N.J.S.A. 2A:14–1.1, was granted (see n. 1, *supra*.) This motion for summary judgment against the third party plaintiff (DRPA) raises the same issues which the court has already decided. For the reasons to be stated, the joint venture is also entitled to summary judgment against DRPA.

(App.Div.1974). A bridge being, in legal effect, the same as a road, *Whitall, supra,* a bridge is "an improvement to real property" within the meaning of N.J.S.A. 2A:14–1.1.[13]

It is clear that this action has been brought more than ten years after the joint venture completed its work. This third party defendant is therefore entitled to summary judgment as a matter of law. F.R.Civ.Proc. 56(c).

Counsel shall prepare and submit the appropriate orders.

13. The above conclusion is reinforced by reference to the compact which created the defendant DRPA. "Bridge" is defined as including "such approach highways and *interests in real property* necessary therefor . . . as may be . . . necessary to facilitate the flow of traffic in the vicinity of a bridge . . . ." (emphasis added) N.J.S.A. 32:3–13.23. "Project" is defined as "any improvement . . . authorized by or pursuant to this compact . . . to be constructed, erected, acquired, owned or controlled or otherwise undertaken by the commission." *Id.* Under the compact the DRPA is authorized to exercise the power of eminent domain or otherwise acquire "any *land* and other property which it may determine is reasonably necessary for the bridge . . . ." (emphasis added) N.J.S.A. 32:3–13.12(2).